ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| DANNY GONZÁLEZ RIVERA<br><br>Parte Recurrida<br><br>V.<br><br>SORAIDA ASAD SÁNCHEZ<br><br>Parte Peticionaria | KLCE202400980 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Carolina<br><br>Caso Núm. CA2019RF00627<br><br>Sala: 301<br><br>Sobre:<br><br>Divorcio |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

**Rivera Pérez, Jueza Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de octubre de 2024.

Comparece ante nos la Sra. Soraida Asad Sánchez (en adelante, Sra. Asad Sánchez o la parte peticionaria) mediante recurso de *Petición de Certiorari*, solicitando la revisión de la *Resolución* emitida el 16 de julio de 2024 y notificada el 22 de julio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Carolina ("TPI"). Mediante esta resolución, se resolvió a favor del Sr. Danny González Rivera (en adelante, Sr. González Rivera) una solicitud de reembolso de gastos escolares y médicos de las hijas menores de las partes presentada por la Sra. Asad Sánchez.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida y se devuelve el caso para la continuación de los procedimientos.

**I**

El 20 de noviembre de 2019, notificada el 25 de noviembre de 2019, el TPI emitió una *Resolución*[1] en este caso, mediante la cual

---

[1] Véase, el apéndice de la *Petición de Certiorari*, a la pág. 7.

les impartió su aprobación a las recomendaciones realizadas por la Oficial Examinadora de Pensiones Alimentarias ("EPA") en el *Informe sobre Pensión Alimentaria Provisional* dictaminado el 14 de noviembre de 2019 y notificado el 15 de noviembre de 2019.[2] De conformidad con dichas recomendaciones, se estableció una pensión alimentaria provisional de $829.00 quincenales, efectiva a partir del 15 de noviembre de 2019, en beneficio de las menores, a ser pagada por el Sr. González Rivera a la Sra. Asad Sánchez. Asimismo, se ordenó que el costo de la matrícula escolar fuera asumido en un 66% por el Sr. González Rivera y en un 34% por la Sra. Asad Sánchez, debiendo realizarse el pago en o antes del 15 de abril de cada año. Igualmente, se dispuso que los gastos relacionados con libros, materiales, uniformes escolares, gastos de graduación y gastos de salud no cubiertos por el plan médico de las menores, siempre que excedieran de $50.00, fueran asumidos por partes iguales. Estos gastos debían ser reembolsados en un plazo de treinta (30) días, previa notificación y presentación de evidencia de pago. Finalmente, se señaló la vista final sobre la revisión de la pensión alimentaria para el 7 de enero de 2020.

Tras varios trámites procesales, el 10 de agosto 2020, la Sra. Asad Sánchez presentó una moción titulada *Urgentísima Solicitud de Autorización para Matricular Menores en Colegio*, mediante la cual solicitó autorización para matricular a las menores en el Colegio San Antonio.[3] En lo pertinente, la Sra. Asad Sánchez alegó que el costo mensual del Colegio San Antonio sería de $1,095.00, lo que representaba un gasto adicional para las partes. Sin embargo, al ser las clases virtuales por la pandemia de COVID-19, el costo se reduciría a $766.50 mensuales, un monto similar al gasto en el colegio anterior. Además, destacó que la educación privada a nivel

---

[2] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 3-6.
[3] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 8-14.

intermedio y superior supondría un aumento de costos, y que el colegio ofrecía un descuento del 50% en la matrícula.

El 12 de agosto de 2020, el Sr. González Rivera presentó una *Moción en Cumplimiento de Orden*, mediante la cual se opuso a la solicitud de la Sra. Asad Sánchez.[4] El Sr. González Rivera argumentó que estaba cumpliendo con su obligación alimentaria, manteniendo al día el pago de la pensión y que incluso le adelantó $400.00 a la Sra. Asad Sánchez para cubrir parte de los costos de matrícula y gastos escolares. Sin embargo, señaló que el colegio propuesto por la Sra. Asad Sánchez implicaba un aumento de $390.00 en la mensualidad, lo que representaba para él un incremento de $257.40, cantidad que no podía costear en la situación económica actual. Explicó que la pandemia de COVID-19 había reducido sus ingresos y que ya no estaba recibiendo algunas de las partidas que se utilizaron para calcular la pensión. Aunque seguía cumpliendo con su obligación alimentaria, sus ingresos actuales eran menores, y anticipaba reducciones adicionales. Finalmente, afirmó que no se estaba negando a pagar la educación de sus hijas, pero que no podía costear el colegio que la Sra. Asad Sánchez proponía con sus recursos actuales. Señaló que los colegios que él había sugerido mantendrían a las menores en los mismos estándares socioeconómicos que tenían al momento del divorcio, mientras que la Sra. Asad Sánchez pretendía inscribirlas en un colegio más costoso que ni siquiera ella podía pagar. Además, aclaró que la afirmación de la Sra. Asad Sánchez de que él se oponía a los demás colegios sugeridos era falsa. Sostuvo que presentó alternativas de colegios laicos, católicos y protestantes, todos ubicados cerca de la residencia de las menores y dentro de su

---

[4] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 16-22.

presupuesto, uno de los cuales estaba a solo dos minutos de la residencia de los abuelos de las niñas.

El 12 de agosto de 2020, la Sra. Asad Sánchez presentó una *Urgentísima Réplica a Moci[ó]n en Cumplimiento de Orden.*[5] Entre otras cosas, la Sra. Asad Sánchez alegó que el costo de la matrícula de las tres menores en el Colegio San Antonio sería de $1,260.00 y no de $2,250.00, como erróneamente afirmó el padre. Destacó que el Colegio San Antonio era la opción más económica y con mejores credenciales académicos y extracurriculares en comparación con las alternativas presentadas por el padre, toda las cuales fueron consideradas responsablemente. Además, indicó que ninguno de los colegios propuestos por el padre tenía un costo inferior al Colegio San Antonio, el cual estaba a solo cinco minutos de la residencia paterna, lo que facilitaría la participación del padre en la educación de sus hijas. Además, argumentó que esta disputa no se trataba de la pensión alimentaria, sino de la educación de sus hijas. Señaló que el padre omitió el hecho de que ella había ofrecido cubrir el 50% del incremento de los costos escolares para facilitar la toma de decisiones en conjunto.

Luego de evaluar la posición de las partes, el 17 de agosto de 2020, el TPI emitió y notificó una *Resolución,* en la que autorizó la matrícula de las menores en el Colegio San Antonio disponiendo además que la Sra. Asad Sánchez "asumirá la mitad del incremento en el gasto escolar."[6]

Así las cosas, el 9 de enero de 2023, la Sra. Asad Sánchez presentó una *Moción de Desacato y Solicitud de Revisión de Pensión Alimentaria.*[7] En esta, alegó que al Sr. González Rivera se le impuso una pensión alimentaria de $829.00 quincenales, además del pago

---

[5] Véase, el apéndice de la *Petición de Certiorari,* a las págs. 23-28.
[6] Véase, el apéndice de la *Petición de Certiorari,* a la pág. 34.
[7] Véase, el apéndice de la *Petición de Certiorari,* a las págs. 35-36.

del 66% de los gastos relacionados con la matrícula, libros, uniformes escolares, graduación y gastos médicos de las menores. Posteriormente, el Tribunal autorizó la matrícula de las menores en el Colegio San Antonio y ordenó a que la madre cubriera la mitad del incremento en el gasto escolar. También alegó que desde entonces, las menores han continuado asistiendo a dicho colegio, pero el Sr. González Rivera ha incumplido repetidamente con los pagos de la pensión suplementaria adeudándole la suma de $3,719.42, que incluye cuotas escolares, cuido extendido y campamento de verano, entre otros. Reiteró que, a pesar de múltiples gestiones de cobro, el Sr. González Rivera no ha cumplido con sus obligaciones. Además, se ha negado a cubrir los costos de las terapias educativas recomendadas para una de las menores, a pesar de que tanto maestros como profesionales de salud las han considerado necesarias para su bienestar.

Finalmente, la Sra. Asad Sánchez solicitó que se emitiera una orden para que el Sr. González Rivera cubriera las sumas adeudadas. Asimismo, pidió que se ajustara la pensión alimentaria debido al incremento en los gastos de las menores y considerando que el Sr. González Rivera había mejorado su situación económica.

El 9 de enero de 2023, el TPI emitió y notificó una *Orden* refiriendo la solicitud de revisión de pensión alimentaria al EPA y concediéndole un término de veinte (20) días al Sr. González Rivera para expresarse con respecto a la deuda reclamada por la Sra. Asad Sánchez.[8]

Tras varios trámites procesales, el 22 de febrero de 2023, el Sr. González Rivera presentó una *Moción en Réplica a Moción de Desacato y en Solicitud de Revisión de Pensión Alimentaria.*[9] En dicha moción, el Sr. González Rivera incluyó un desglose que la Sra.

---

[8] Véase, el apéndice de la *Petición de Certiorari*, a la pág. 37.
[9] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 41-48.

Asad Sánchez le había enviado mediante correo electrónico con los gastos escolares de las menores, especificando los conceptos, las cantidades y las proporciones a pagar por ambas partes. El Sr. González Rivera especificó para cada gasto si había realizado el pago o no. En los casos en los que no había realizado el pago, ofreció una explicación de los motivos por los que no lo hizo.

El 23 de febrero de 2023, el TPI emitió y notificó una *Orden* mediante la cual se dispuso lo siguiente:

> "Las partes tienen **20 días** para reunirse e intercambiar todos los recibos aquí presentados y para presentar una **Moción Conjunta** en la que expresen si aún existe alguna controversia respecto al reclamo de la deuda hecho por la demandada.
>
> En cuanto a los gastos relacionados a las cuotas de la Sociedad de Honor, aun cuando el demandante alega que no se consultó, el Tribunal ordena que los satisfaga ya que ello no se considera un gasto superfluo.
>
> En cuanto a la alegada deuda de $2,340.00 por concepto de deuda en Academia Montessori cada parte pagará un **50%**. […]" (énfasis en el original).[10]

Una vez concluido el proceso de descubrimiento de prueba, se celebró la vista sobre revisión de pensión alimentaria el 5 de julio de 2023 ante el EPA. Durante la vista, las partes alcanzaron un acuerdo que fue presentado ante el Tribunal, solicitando que se dictara resolución de conformidad con el mismo. El acuerdo incluía lo siguiente:

> "1. El pago mensual de $2,056.00, a razón de $948.92 bisemanal, a través del depósito del dinero en efectivo en la cuenta bancaria de la promovente.
>
> 2. El reembolso del 66% del gasto de libros, uniformes y materiales escolares, de los gastos de graduación, los gastos extraordinarios (por acuerdo entre las partes) y de los gastos de salud de $50.00 o más no cubiertos por el plan médico de las menores, en el término de 30 días, previa notificación y presentación de evidencia de pago, teniendo 30 días desde que se incurrió en el gasto para presentar dicha evidencia, so pena de entenderse renunciados, salvo que medien circunstancias extraordinarias.

---

[10] Véase, la entrada núm. 63 del expediente digital del caso núm. CA2019RF00627 en el Sistema Unificado de Manejo y Administración de Casos ("SUMAC").

3. La aportación de igual proporción al costo de la matrícula escolar, en o antes de la fecha que disponga la institución educativa, directamente a la institución que fuere."

El 10 de julio de 2023, el EPA presentó ante el TPI un *Informe sobre Estipulación de Pensión Alimentaria Provisional* recomendando que se dictara resolución "conforme a los acuerdos que han llegado las partes, por no ser perjudiciales y satisfacer adecuadamente las necesidades de las menores."[11] Finalmente, se señaló la vista final de revisión para el 21 de septiembre de 2023.

El 11 de julio de 2023, notificada el 17 de julio de 2023, el TPI emitió una *Resolución*, mediante la cual les impartió su aprobación a las recomendaciones hechas por el EPA en su informe.[12] De conformidad con dichas recomendaciones, se estableció una pensión alimentaria provisional de $2,056.00, a razón de $948.92 bisemanal, efectiva el 7 de julio de 2023, a ser pagada por el Sr. González Rivera a la Sra. Asad Sánchez en beneficio de las menores. Además, se dispuso lo siguiente:

"Se ordena a las partes que el pago de la matrícula escolar sea asumido a razón de 66% la promovente y 34%, el promovido; en o antes de la fecha que provea la institución educativa. Además, que asuman igual proporción del gasto de libros, materiales y uniformes escolares, de los gastos de graduación, gastos extraordinarios (por acuerdo entre las partes) y de los gastos de salud de $50.00 o más, no cubiertos por el plan médico de las menores, mediante reembolso en el término de 30 días, previa notificación y presentación de evidencia de pago, teniendo 30 días desde que se incurrió en el gasto para presentar dicha evidencia, so pena de entenderse renunciados, salvo que medien circunstancias extraordinarias.

Se señala la vista de alimentos mediante videoconferencia para el 21 de septiembre de 2023 [...]."

El 14 de agosto de 2023, el Sr. González Rivera presentó una *Moción en Torno a Informe Social y en Solicitud de Remedios.*[13] En

---

[11] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 74-75.
[12] Véase, el apéndice de la *Petición de Certiorari*, a la pág. 76.
[13] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 77-82.

síntesis, el Sr. González Rivera indicó que la Sra. Asad Sánchez había incurrido en varios gastos escolares sin consultárselos previamente, exigiéndole posteriormente el reembolso de su parte correspondiente. Asimismo, señaló que la Sra. Asad Sánchez no lo estaba informando sobre las citas médicas de las menores y que se enteraba de ellas al recibir los recibos solicitando el reembolso de la parte que le correspondía. El Sr. González Rivera solicitó que se designara una Coordinadora de Parentalidad para facilitar una comunicación asertiva entre las partes en beneficio de las menores; que se ordenara a la Sra. Asad Sánchez consultar los gastos escolares y médicos de las menores, y que se cumpliera con el pago del 50% del incremento del gasto escolar, según ordenado por el Tribunal.

Al día siguiente, la Sra. Asad Sánchez presentó una *Moción en Réplica a Moción en Torno a Informe Social y en Solicitud de Remedios*, en la cual se opuso a lo solicitado y, además, ofreció su versión de los hechos, refutando las alegaciones del Sr. González Rivera.[14]

El 15 de agosto de 2023, notificada el 17 de agosto de 2023, el TPI emitió una *Orden*,[15] en la cual se dispuso lo siguiente:

> "Atendidas las posiciones de las partes el Tribunal resuelve lo siguiente:
>
> 1. En cuanto al asunto de la custodia compartida, académico; el padre desistió de su solicitud de custodia, el asunto fue discutido en la vista de lectura de informe social del 15 de agosto de 2023 y se emitió una Resolución de conformidad a los acuerdos allí alcanzados.
>
> 2. En cuanto al cambio de psicóloga el Tribunal no lo ve con buenos ojos. Por tanto, las partes se comunicarán con los respectivos planes médicos para buscar alternativas de reembolso, etc.
>
> 3. En cuanto a la solicitud de un Coordinador de Parentalidad, académico; en la vista de lectura de informe social del 15 de agosto de 2023 se alcanzaron

---

[14] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 83-86.
[15] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 90-91.

unos acuerdos y se emitió una Resolución[16] de conformidad a los acuerdos logrados.

4. En cuanto a que se le ordene a la demandada consultar los gastos de las menores que son inherentes a la Patria Potestad, ha lugar, so pena de que la demandada tenga que asumir en su totalidad el gasto no consultado. Ante la falta de acuerdos previos con el gasto deberán recurrir al Tribunal quien resolverá.

5. El Tribunal ratifica su dictamen anterior que es el siguiente: "SE AUTORIZA LA MATRÍCULA DE LAS MENORES EN EL COLEGIO SAN ANTONIO. LA PROGENITORA (MADRE) ASUMIRÁ LA MITAD DEL INCREMENTO EN EL GASTO ESCOLAR."

6. En cuanto a que se le ordene a la demandada ofrecer la información de las citas médicas de las menores, ha lugar."

Tras varios trámites procesales, el 6 de julio de 2024, la Sra. Asad Sánchez presentó la *Moción de Desacato* que nos ocupa.[17] Por medio de este escrito, la Sra. Asad Sánchez solicitó que se ordenara al Sr. González Rivera realizar de inmediato el pago de la cantidad total de $1,563.87, que correspondía a gastos escolares y médicos de las menores. La Sra. Asad Sánchez acompañó su moción con un documento en el que se desglosaban dichos gastos. Destacó que "que el desglose detallado fue compartido con éste [el Sr. González Rivera] en cada ocasión en que el gasto fue incurrido".

El 7 de julio de 2024, la Sra. Asad Sánchez presentó una *Moción de Reconsideración y Solicitud de Orden*.[18] En lo pertinente, solicitó que se adelantara la vista de revisión de pensión pautada para el 24 de septiembre de 2024, la cual había sido suspendida en varias ocasiones.

Mediante *Orden* emitida y notificada el 10 de julio de 2024, el TPI dispuso lo siguiente con respecto a las mociones presentadas por las partes:

"1. Se refiere de inmediato al EPA para que adelante la vista de alimentos del 24 de septiembre de 2024.

---

[16] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 87-89.
[17] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 92-97.
[18] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 98-102.

2. El demandante tiene 15 días finales para proveer los estados bancarios de los pasados 12 meses, la planilla de contribución del 2023 y actualice su PIPE.

3. Sobre la orden ordenando a la madre cubrir el 50% del incremento del gasto escolar, nada que proveer porque ello será considerado en la vista de alimentos dependiendo de la capacidad económica de las partes." (énfasis en el original suprimido).[19]

El 15 de julio de 2024, el Sr. González Rivera presentó una *Moción en Réplica a Moción de Desacato y Solicitud de Apercibimiento por Litigar de Forma Temeraria*.[20] En síntesis, argumentó que los gastos incurridos por la Sra. Asad Sánchez eran excesivos y no fueron consultados previamente con él. Además, solicitó que se reconociera que se encontraba al día con el pago de la pensión alimentaria, que se le acreditara el pago en exceso realizado, y que se ordenara a la Sra. Asad Sánchez desistir de presentar ante el tribunal asuntos que ya habían sido resueltos.

El 16 de julio de 2024, notificada el 22 de julio de 2024, el TPI emitió la *Resolución* aquí recurrida, mediante la cual falló a favor de vario de los reclamos del Sr. González Rivera.[21] En dicha resolución, se dispuso lo siguiente:

"Atenidas las posiciones de las partes resolvemos:

1. Los 4 primeros gastos reclamados por la demandada en su tabla (de la moción de desacato entrada a Sumac #147), No Ha Lugar al reembolso por excesivos y no haberse consultado con el demandante.

2. Los gastos por concepto de "Back to School", No Ha Lugar pues la demandada propuso pagar el incremento del 50%.

3. Ha lugar al reembolso de las terapias pendientes de pagar por el demandante.

4. En cuanto a las 9 tutorías de inglés y la evaluación para tratamiento de ortodoncia que se reclaman, No Ha Lugar al reembolso por no haberse consultado ni autorizado.

---

[19] Véase, el apéndice de la *Petición de Certiorari*, a la pág. 105-A.
[20] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 110-117.
[21] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 118-119.

5. En cuanto a las cuotas de 2 de las menores para sus futuras celebraciones de graduación, No Ha Lugar al reembolso por ser un pago voluntario/opcional.

6. En cuanto a otros gastos de la graduación de [...], No Ha Lugar al reembolso por excesivos y no haberse consultado con el demandante.

EL TRIBUNAL RATIFICA SU DICTAMEN ANTERIOR QUE ES EL SIGUIENTE: "SE AUTORIZA LA MATRÍCULA DE LAS MENORES EN EL COLEGIO SAN ANTONIO. LA PROGENITORA (MADRE) ASUMIRÁ LA MITAD DEL INCREMENTO EN EL GASTO ESCOLAR."

EL TRIBUNAL RATIFICA SU DICTAMEN ANTERIOR QUE ES EL SIGUIENTE: "EN CUANTO A QUE SE LE ORDENE A LA DEMANDADA CONSULTAR LOS GASTOS DE LAS MENORES QUE SON INHERENTES A LA PATRIA POTESTAD, HA LUGAR, SO PENA DE QUE LA DEMANDADA TENGA QUE ASUMIR EN SU TOTALIDAD EL GASTO NO CONSULTADO. ANTE LA FALTA DE ACUERDOS PREVIOS CON EL GASTO DEBERÁN RECURRIR AL TRIBUNAL QUIEN RESOLVERÁ."

Se advierte a la demandada que no puede incurrir en un gasto no consultado u objetado, so pena de pagarlo en su totalidad. Las controversias sobre los gastos se deben traer ante el Tribunal previo a incurrir en los mismos."

En desacuerdo con la determinación del TPI, el 6 de agosto de 2024, la Sra. Asad Sánchez presentó una *Moción de Reconsideración*,[22] a la cual se opuso el Sr. González Rivera mediante *Moción en Oposición a Solicitud de Reconsideración y Sometiendo Evidencia de que Gastos Reclamados No Proceden.*[23]

Finalmente, el 9 de agosto de 2024, notificada el 12 de agosto de 2024, el TPI emitió una *Orden* declarando No Ha Lugar la solicitud de reconsideración de la Sra. Asad Sánchez.[24] Además, se dispuso lo siguiente:

"LA VISTA DE REVISÓN DE ALIMENTOS ESTÁ PAUTADA PARA EL 23 DE AGOSTO DE 2024 Y ALLÍ SE DETERMINARÁ LA CAPACIDAD ECONÓMICA DE CADA PROGENITOR.

RATIFICAMOS QUE NO SON REEMBOLSABLES LOS GASTOS QUE NO FUERON CONSULTADOS Y/O CONSENTIDOS. ANTE LA FALTA DE ACUERDO

---

[22] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 120-153.
[23] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 154-159.
[24] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 160-161.

DEBERÁ RECURRIRSE AL TRIBUNAL QUIEN DETERMINARÁ LA RAZONABILIDAD DE LOS GASTOS Y SI PROCEDE EL REEMBOLSO.

EL TRIBUNAL EXHORTA A LAS PARTES A ABRIR LOS CANALES DE COMUNICACIÓN PARA EVITAR ESTE TIPO DE CONTROVERSIAS. AMBAS PARTES TIENEN REPRESENTACIÓN LEGAL Y ESTAS MUY BIEN PUEDEN AYUDARLOS A ALCANZAR ACUERDOS EN ESTE TIPO DE CONTROVERSIAS."[25]

Aún inconforme, la Sra. Asad Sánchez acudió ante nos el 11 de septiembre de 2024 mediante el presente recurso de *Certiorari*. Señala la comisión de los errores siguientes:

**Primer error:** Cometió error de derecho el Tribunal de Primera Instancia al mantener la orden de 17 de agosto de 2020 que ordena a la madre asumir la mitad del incremento en el gasto escolar, a pesar de que las determinaciones de alimentos nunca son cosa juzgada y se establecen tomando en cuenta las necesidades del alimentista y la capacidad del alimentante.

**Segundo error:** Cometió error de derecho el Tribunal de Primera Instancia al denegar el reembolso de gastos que fue estipulado.

El 11 de octubre de 2024, el Sr. González Rivera presentó *Solicitud de Desestimación y/o Alegato de la Parte Recurrida.* En la solicitud de desestimación del recurso de *certiorari*, el recurrido argumenta que, la determinación emitida el 17 de agosto de 2020 autorizando que las menores fueran matriculadas en el Colegio San Antonio, con la madre asumiendo el 50% del incremento en el gasto escolar, emitida el 17 de agosto de 2020, que la Sra. Asad alega fue una provisional, fue ratificada por el TPI mediante la *Orden* emitida el 15 de agosto de 2023 y notificada el 17 de agosto de 2023 y, posteriormente por la *Resolución* recurrida. A pesar de que la Sra. Asad no solicitó reconsideración ni recurrió de estas órdenes, ahora intenta revisar una determinar que se considera final desde el 16 de septiembre de 2023.

---

[25] Surge del expediente, que la vista final de revisión de pensión alimentaria se celebró el 23 de agosto de 2024 ante el EPA y se señaló su continuación para el 23 de octubre y el 5 de diciembre de 2024.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A.**

El Artículo 4.006 de la Ley Núm. 201-2003, según enmendada, *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, 4 LPRA sec. 24y, establece que el Tribunal de Apelaciones conocerá, "[m]ediante auto de *certiorari* expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia." El *certiorari* ha sido definido por el Tribunal Supremo como "un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido." *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

La expedición de un recurso de *certiorari* para revisar órdenes y resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia está limitada por la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Esta Regla establece que el recurso de *certiorari* "solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injunction*] o de la denegatoria de una moción de carácter dispositivo." *Íd.* Por excepción a lo dispuesto anteriormente, la Regla 52.1 de Procedimiento Civil, *supra,* también autoriza la revisión mediante *certiorari* de órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre los asuntos siguientes: la admisibilidad de testigos de hechos o peritos esenciales; asuntos relativos a privilegios evidenciarios; anotaciones de rebeldía; en

casos de relaciones de familia; en casos que revistan interés público, o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.[26] *Íd.* De esta forma, se reconoce, según explica el Profesor Hernández Colón, "que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata." R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 533.

Conforme establece la Regla 52.1 de Procedimiento Civil, *supra*, "[c]ualquier otra resolución u orden interlocutoria dictada por el Tribunal de Primera Instancia podrá ser revisada mediante el recurso de apelación que se presente contra la sentencia final dictada por el Tribunal de Primera Instancia, sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales."

Resulta necesario destacar que "[l]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209, citando a *IG Builders et al. v. BBVAPR*, supra, pág. 338. En el ámbito judicial, el concepto discreción ha sido definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera." *IG Builders et al. v. BBVAPR*, supra, pág. 338; *García v. Padró*, 165 DPR 324, 334-335 (2005); *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

El Tribunal Supremo ha señalado que la discreción del Tribunal de Apelaciones para expedir un auto de *certiorari* no debe

---

[26] Estas disposiciones fueron incorporadas a la Regla 52.1 de Procedimiento Civil de 2009, *supra*, mediante la Ley Núm. 220-2009 y la Ley Núm. 177-2010.

ejercerse de manera aislada en abstracción del resto del Derecho. *Íd*. En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, enmarca los criterios que el Tribunal de Apelaciones deberá tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Esta Regla dispone lo siguiente:

> "El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Lo anterior implica que la determinación de expedición del auto de *certiorari* deber ser evaluada en el contexto de todos los derechos aplicables y bajo las pautas específicas que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, proporciona.

**B.**

En nuestra jurisdicción, los casos de derecho a alimentos de menores "están revestidos del más alto interés público, siendo el interés principal el bienestar del menor." *Díaz Rodríguez v. García Neris*, 208 DPR 706, 718 (2022); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012); *Toro Sotomayor v. Colón Cruz*, 176

DPR 528 (2009); *Argüello v. Argüello*, 155 DPR 62, 70 (2001). "Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia." Artículo 653 del Código Civil, 31 LPRA sec. 7531. Cuando el alimentista es menor de edad, también comprenden "su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales." *Íd.*

La obligación de alimentar al menor es inherente a la maternidad y la paternidad, por lo que recae sobre los obligados desde el momento en que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar. *Díaz Rodríguez v. García Neris*, supra; *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 560-561. Esta obligación es personal de cada uno de los padres por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor. *Díaz Rodríguez v. García Neris*, supra; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019).

Con el fin de lograr que los obligados contribuyan a la manutención de los menores dependientes, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como *"Ley Orgánica de la Administración para el Sustento de Menores"*, 8 LPRA sec. 502 *et seq. Díaz Rodríguez v. García Neris*, supra; *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 562-563. Asimismo, se adoptaron las Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 8529, Departamento de Estado, 30 de octubre de 2014, y las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 9535, Departamento de Estado, 15

de febrero de 2024, para determinar las pensiones alimentarias de los alimentistas menores de edad en Puerto Rico, basadas en criterios numéricos y descriptivos, los cuales faciliten el cómputo de la cuantía de la obligación alimentaria. Véase, Artículo 2 del Reglamento Núm. 9535, *supra*; Artículo 19 de la Ley Núm. 5 de 30 de diciembre de 1986, *supra*.[27]

A través de un descubrimiento de prueba amplio y compulsorio sobre la situación económica de las partes, las Guías permiten establecer de manera uniforme y equitativa la aportación monetaria de cada parte mediante criterios numéricos y descriptivos que toman en consideración los ingresos de los obligados y las necesidades de los menores. *Díaz Rodríguez v. García Neris*, supra; *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016); *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 564.

En lo pertinente al caso ante nuestra consideración, las Guías definen los *gastos suplementarios* como:

> "Gastos que tanto la persona custodia como la persona no custodia deben sufragar para satisfacer las necesidades del o de la alimentista, que no se contemplan en la pensión alimentaria básica. Incluye gastos de educación, vivienda, y gastos de salud no cubiertos por un plan de seguro médico.
>
> También incluye los gastos por concepto de cuido del o de la alimentista, cuando la persona custodia se vea obligada a incurrir en los mismos para poder estudiar o ejercer una profesión u oficio. Al momento de determinar los gastos suplementarios, el juzgador o la juzgadora deberá considerar no solo los gastos que efectivamente se pagaron, sino también aquellos que son necesarios sufragar para satisfacer todas las necesidades del o de la alimentista." Artículo 7 (14) del Reglamento Núm. 8529, *supra*. Véase, además, Artículo 5 (16) del Reglamento Núm. 9535, *supra*.

Las Guías establecen que los gastos suplementarios son los siguientes:

> "1. [...]

---

[27] Nótese, la reclamación objeto del presente caso es sobre una pensión impuesta previo a la fecha de vigencia del Reglamento Núm. 9535, *supra*, por lo tanto, las disposiciones aplicables son aquellas contenidas en el Reglamento Núm. 8529, *supra*.

a) Gastos por cuido: [...]

b) Gastos por concepto de educación, educación vocacional o educación preescolar: Se tomará en consideración la matrícula anual, el pago de las mensualidades de la institución educativa privada, el pago por concepto de estudios supervisados y tutorías, el gasto de transportación escolar, los gastos anuales en los que se incurra para la compra de uniformes, textos escolares o universitarios y efectos escolares, cualquier gasto relacionado con la educación del o de la alimentista y cualquier gasto extracurricular que propenda al desarrollo integral del o de la menor. También se tomará en consideración el pago de un hospedaje en los casos de estudiantes universitarios que necesiten sufragar este gasto para poder estudiar.

Con relación a la mensualidad de la institución educativa privada, la misma se multiplicará por el número de meses en los que se debe pagar dicha mensualidad y el resultado se suma a la cantidad que anualmente se paga por concepto de matrícula, textos escolares o universitarios, libros, uniformes, efectos escolares, hospedajes y otros gastos relacionados. El producto obtenido se divide entre doce (12) meses para obtener el gasto mensual por este concepto.

En aquellos casos en los que el o la alimentista asista a una escuela pública, se tomará en consideración los gastos anuales en los que se incurra para la compra de uniformes, efectos escolares y otros gastos relacionados con la educación del o de la alimentista. La cantidad a la que asciendan los mismos, se divide entre doce (12) meses para obtener el gasto mensual por este concepto.

No obstante[,] lo dispuesto en los dos párrafos anteriores, se podrá prorratear el pago de matrícula, textos escolares o universitarios, materiales y uniformes en dos (2) pagos al año que coincidan con el inicio de cada semestre escolar.

El gasto por concepto de educación deberá responder al criterio de razonabilidad, por lo que el juzgador o juzgadora deberá tomar en consideración la situación económica de la persona custodia y la de la persona no custodia, las circunstancias del o de la alimentista y el estilo de vida familiar.

c. Gastos de salud no cubiertos por un plan o seguro médico: Se refiere a cualquier gasto por concepto de salud que redunde en el beneficio del o de la alimentista, que no esté cubierto por su seguro médico. Ejemplos de éstos son: gastos por concepto de salud visual, dental, ortodoncia, emocional, terapias, evaluaciones, gastos de rehabilitación vocacional, gastos de ortopedia, gastos por concepto de medicina alternativa o no tradicional, deducibles recurrentes, entre otros.

d. Vivienda: [...]

[...]." Artículo 20 del Reglamento Núm. 8529, *supra*. Véase, además, Artículo 17 del Reglamento Núm. 9535, *supra*.

En cuanto al cómputo de la pensión alimentaria suplementaria, las Guías disponen lo siguiente:

"2. En todos los casos en los que existan gastos suplementarios se computará una pensión alimentaria suplementaria de conformidad con los pasos siguientes:

a) Se suman las partidas de gastos suplementarios que correspondan en cada caso. Los gastos suplementarios son aquellos que se enumeran en el inciso 1 de este Artículo.

b) El resultado (atenido tras la suma, se multiplica por el por ciento determinado para la persona no custodia de conformidad con lo establecido en el Artículo 16 (2) de este Reglamento. El producto de la referida multiplicación constituye la pensión alimentaria suplementaria que debe proveer la persona no custodia.

c) La cantidad a la que ascienda la pensión alimentaria suplementaria se suma a la pensión alimentaria básica determinada; el resultado constituye la pensión alimentaria que la persona no custodia debe proveer."

Por otra parte, las Guías definen los *gastos suplementarios extraordinarios* como:

"Aquellos que sean necesarios para la educación, salud y vivienda de los y las alimentistas, pero los cuales no son recurrentes o cuya frecuencia excede los treinta y seis (36) meses. Ejemplo: gastos de graduación, derrama, gastos deportivos no recurrentes, deducibles no recurrentes, intervenciones quirúrgicas, entre otros. Al momento de determinar los gastos suplementarios, el juzgador o la juzgadora deberá considerar no solo los gastos que efectivamente se pagaron, sino también aquellos que son necesarios sufragar para satisfacer todas las necesidades del o de la alimentista." Artículo 7 (15) del Reglamento Núm. 8529, *supra*. Véase, además, Artículo 5 (17) del Reglamento Núm. 9535, *supra*.

En lo que respecta al cómputo de estos gastos, las Guías disponen lo siguiente:

"a) Por la naturaleza de los gastos suplementarios extraordinarios, estos no serán parte de la pensión alimentaria que el o la alimentista debe recibir mensualmente o con la frecuencia que determine el juzgador o la juzgadora. Los mismos serán computados a la luz de las circunstancias de cada caso y luego de tomar en consideración los factores siguientes: (a) la cuantía y naturaleza del gasto suplementario extraordinario, (b) la capacidad económica de la

persona custodia y de la persona no custodia, (c) los términos y condiciones de pago relacionados con la obligación y (d) los acuerdos entre las partes en relación con dichas necesidades suplementarias extraordinarias.

b) Una vez determinada la procedencia y cantidad del gasto suplementario extraordinario se determinará la proporción que la persona custodia y la persona no custodia deben aportar de conformidad con lo establecido en el Artículo 16 (2) de este Reglamento y, en cuanto a la persona no custodia, se le ordenará pagar lo que a esta corresponda con la frecuencia que amerite según el caso y a la luz de la totalidad de las circunstancias." Artículo 20 (3) del Reglamento Núm. 8529, *supra*. Véase, además, Artículo 17 (6) del Reglamento Núm. 9535, *supra*.

### III

En su recurso de *Certiorari*, la Sra. Asad Sánchez señala que el Tribunal de Primera Instancia erró "al mantener la orden de 17 de agosto de 2020 que ordena a la madre asumir la mitad del incremento en el gasto escolar, a pesar de que las determinaciones de alimentos nunca son cosa juzgada y se establecen tomando en cuenta las necesidades del alimentista y la capacidad del alimentante" y "al denegar el reembolso de gastos que fue estipulado". Evaluado el presente recurso de *Certiorari* a la luz de los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, concluimos que procede nuestra intervención con la decisión del dictamen recurrido, por lo que determinamos expedirlo.

De un examen del trámite procesal de este caso, observamos que el foro apelado emitió varias órdenes que resultan incompatibles entre sí. Inicialmente, mediante la *Resolución*[28] emitida el 11 de julio de 2023 y notificada el 17 de julio de 2023, el Tribunal dispuso que el Sr. González Rivera asumiría el 66% del costo de la matrícula escolar del Colegio San Antonio y la Sra. Asad Sánchez el 34%. Además, el Tribunal dispuso que ambas partes asumirían, en igual

---

[28] Véase, el apéndice de la *Petición de Certiorari*, a la pág. 76.

proporción, los gastos relacionados con libros, materiales y uniformes escolares, así como los gastos de graduación y los gastos extraordinarios acordados mutuamente. Asimismo, los gastos médicos no cubiertos por el plan de salud, que excedieran los $50.00, debían ser reembolsados en un plazo de treinta (30) días, previa notificación y presentación de la evidencia de pago. Esta decisión se emitió por el Tribunal tras acoger la recomendación del EPA de aprobar el acuerdo alcanzado por las partes durante la vista de revisión de pensión celebrada el 5 de julio de 2023. Las estipulaciones alcanzadas por las partes, y que reciben la aprobación del tribunal, "constituyen un contrato de transacción judicial que las obliga, pues pone fin a una acción e incorpora unos acuerdos al proceso judicial en curso." *Díaz Rodríguez v. García Neris, supra,* pág.720.

Posteriormente, mediante la *Orden*[29] de 15 de agosto de 2023, notificada el 17 de agosto de 2023, de manera incompatible con la orden anterior, el Tribunal ordenó a la Sra. Asad Sánchez a consultar previamente con el Sr. González Rivera los gastos relacionados con las menores que fueran inherentes a la patria potestad. En caso de no llegar a un acuerdo sobre dichos gastos, se debía recurrir al tribunal para que resolviera el asunto. Además, el Tribunal ratificó la decisión que autorizaba la matrícula de las menores en el Colegio San Antonio y ordenó a que la Sra. Asad Sánchez asumiera la mitad del incremento en los gastos escolares.

Finalmente, mediante la *Resolución*[30] de 16 de julio de 2024, notificada el 22 de julio de 2024, en atención a la solicitud de desacato que nos ocupa, el Tribunal declaró No Ha Lugar los gastos reclamados por la Sra. Asad Sánchez al Sr. González Rivera por "Vestuario [A...] desfile Field Day", "Cupcakes pedidos para Honor",

---

[29] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 90-91.
[30] Véase, el apéndice de la *Petición de Certiorari*, a las págs. 118-119.

"Traje de baño Class Day [G...]", y "Hair and Makeup [A...] JR Prom", al considerar que eran excesivos y no habían sido consultados con el Sr. González Rivera. Asimismo, el Tribunal declaró No Ha Lugar la reclamación del balance adeudado por el Sr. González Rivera por los gastos relacionados con el regreso a clases del año escolar 2023-2024 de las menores, debido a que la Sra. Asad Sánchez se había comprometido a asumir la mitad del incremento en los gastos escolares.

Igualmente, el Tribunal declaró Ha Lugar el reembolso del pago por las terapias educativas y del habla de la menor [G...]. No obstante, declaró No Ha Lugar el reembolso del pago de sus tutorías de inglés y la evaluación de ortodoncia. Igualmente, declaró No Ha Lugar el pago de la cuota de graduación de noveno de [B...] y de la cuota para la futura celebración de graduación de [A...], al considerarlas voluntarias y opcionales. Finalmente, también declaró No Ha Lugar los gastos catalogados por las Sra. Asad Sánchez como "Otros Gastos de Graduación de [B...]", que incluían traje, accesorios, ropa interior, vestimenta y zapatos de graduación, al considerarlos excesivos y por no haber sido consultados previamente con el Sr. González Rivera.

A nuestro juicio, estas órdenes resultan incompatibles entre sí y no se ajustan a lo dispuesto por el Tribunal al acoger el acuerdo alcanzado por las partes, el cual fue recomendado por el EPA. Estas órdenes suponen un retroceso, ignorando que estos asuntos ya habían sido resueltos. Por lo tanto, consideramos que procede la revocación de la resolución recurrida.

El Tribunal de Primera Instancia deberá celebrar una vista evidenciaria en la que se le brinde la oportunidad a la Sr. Asad Sánchez de demostrar si cumplió con lo estipulado por las partes y acogido por el tribunal en cuanto al pago de los gastos

extraordinarios que se deben reembolsar. En específico las partes acordaron lo siguiente:

"Se ordena a las partes que el pago de la matrícula escolar sea asumido a razón de 66% la promovente y 34%, el promovido; en o antes de la fecha que provea la institución educativa. **Además, que asuman igual proporción del gasto de libros, materiales y uniformes escolares, de los gastos de graduación, gastos extraordinarios (por acuerdo entre las partes) y de los gastos de salud de $50.00 o más, no cubiertos por el plan médico de las menores, mediante reembolso en el término de 30 días, previa notificación y presentación de evidencia de pago, teniendo 30 días desde que se incurrió en el gasto para presentar dicha evidencia, so pena de entenderse renunciados, salvo que medien circunstancias extraordinarias.** (Énfasis suplido).

El Tribunal también deberá brindarle a la parte peticionaria la oportunidad de demostrar que cumplió con lo estipulado en cuanto a la notificación de los gastos y presentación de evidencia y que dicha gestión la realizó en el término de treinta (30) días desde que incurrió en el gasto, so pena de no ser reembolsado el mismo. Es importante que el foro primario imparta instrucciones claras y precisas a las partes de la forma en la cual se estaría manejando la situación en que se deba consultar un gasto y la parte consultada no responda con premura ante la necesidad de este.

Además, se aclara que para los gastos que el Tribunal considere excesivos, pero se haya cumplido con lo estipulado, este deberá determinar qué cantidad es razonable y concederla.

Por tanto, en cuanto, a los gastos reclamados por "Vestuario [A...] desfile Field Day", "Cupcakes pedidos para Honor", "Traje de baño Class Day [G...]", "Hair and Makeup [A...] JR Prom"; y los "Otros Gastos de Graduación de [B...]", que incluyen traje, accesorios, ropa interior, vestimenta y zapatos de graduación, **el TPI deberá determinar si la Sra. Asad Sánchez cumplió con lo estipulado. Además, deberá determinar qué cantidad si alguna es razonable y concederla conforme a los porcientos dispuestos.**

En cuanto a los gastos relacionados con el regreso a clases del año escolar 2023-2024 de las menores, **ambas partes los asumirán conforme a los porcientos acordados.**

En cuanto a las terapias educativas y del habla, las tutorías de inglés de la menor [G...] y la evaluación para el tratamiento de ortodoncia de la menor [A...], **el TPI deberá determinar si la Sra. Asad Sánchez cumplió con notificar al Sr. González Rivera y presentar la evidencia de pago. Ambas partes los asumirán de conformidad al porciento acordado para estos gastos, según el acuerdo alcanzado y aprobado por el Tribunal.**

En cuanto a la cuota de graduación de noveno grado de la menor [B...] y la cuota de la futura celebración de graduación de la menor [A...], **ambas partes los asumirán conforme a la estipulación alcanzada y aprobada por el Tribunal.**

Finalmente, se aclara que, conforme al acuerdo alcanzado por las partes y aprobado por el Tribunal, ambas partes asumirían el porciento que le corresponde del costo de la matrícula escolar del Colegio San Antonio. No entendemos por qué el Tribunal volvió a ordenar que la Sra. Asad Sánchez asumiera el 50% del incremento en el gasto escolar, cuando ya se había llegado a un acuerdo con respecto a este asunto. Los gastos relacionados con libros, materiales y uniformes escolares, así como los gastos de graduación no constituyen un incremento en el gasto escolar. Estos son gastos que ambas partes deberán asumir conforme a los porcentajes establecidos, conforme al acuerdo.

Por último, una vez establecida la cuantía final a ser reembolsada conforme a la responsabilidad del Sr. González Rivera el tribunal deberá ordenar su pago de forma inmediata y de no cumplir la parte recurrida en el término dispuesto el foro primario deberá citar para vista de orden de mostrar causa por desacato.

**IV**

Por los fundamentos expuestos, se expide el auto de *Certiorari* y se revoca la resolución recurrida. Se ordena la continuación de los procedimientos ante el TPI conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones